UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────────

DALE A. BENTON, Jr.,

                         Petitioner,

        -vs-                              **No. 6:14-CV-06012(MAT)**
                                          **DECISION AND ORDER**
D. LACLAIR, Superintendent,
Franklin Correctional Facility,

                         Respondent.

─────────────────────────────────────

## I.    Introduction

        Proceeding <u>pro</u> <u>se</u>, Dale A. Benton, Jr. ("Petitioner") filed a
petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.
Petitioner is in Respondent's custody as the result of a judgment
of conviction entered in New York State County Court, Monroe County
(Geraci, J.), on January 7, 2009, convicting him, following a jury
trial, of Robbery in the First Degree (New York Penal Law ("P.L.")
§ 160.15(4)).

## II.   Factual Background and Procedural History

### A.    Petitioner's Trial, Sentencing, and Appeal

        The Robinson family owned a deli and grocery store on Pullman
Avenue in the City of Rochester. There was a clothing store, also
owned by the Robinson family, attached to the deli/grocery store.
On December 17, 2007, eleven-year-old Abrielle Robinson
("Robinson") had a "snow day" from school, so she was working at
the store that afternoon; Randloff Scott ("Scott"), whom Abrielle

considered her uncle,[1] was working at the clothing store. There were no other employees working at the time.

While Robinson was working at the front cash register, two African-American men came into the deli/grocery store and then went over to the clothing store. About ten or fifteen minutes later, one of the men came up to Robinson and said something she did not understand. Robinson later identified this man, who was wearing denim jeans and a tan hoodie, as Petitioner. Robinson glanced down to get something, and when she looked back up, Petitioner was pointing a black handgun at her face. Petitioner said, "[D]on't scream, don't say anything, shorty, don't do nothing." T.251. When Robinson tried to push the panic button under the counter, Petitioner told her not to do that, and she complied. Petitioner then came around the counter and ordered her to open the register. Robinson opened the cash register as directed, and Petitioner removed money out of it. He then instructed Robinson to open the Lotto machine, but Robinson said that there was no money in it. Petitioner told Robinson to give him some Newport cigarettes instead.

Petitioner then went back to the public side of the counter, still holding the gun. He said, "[S]orry, shorty," and ordered her to not tell anybody what had occurred.

---

[1] By the time of trial, Scott had left the jurisdiction after having ended his relationship with Abrielle's aunt. Scott therefore did not testify at Petitioner's trial.

Robinson estimated that her encounter with Petitioner lasted about ten to fifteen minutes. After Petitioner left the store, Robinson started to cry and called her parents, who told her to call 911. Instead, Robinson used the panic button to summon help. Robinson's parents arrived at the store before the police.

Robinson went to the police station the same day as the robbery and gave a description of the robber to Investigator Kirk Pero ("Inv. Pero") of the Rochester Police Department. Robinson described him as an African-American male in his early 30's, about 6' tall and 160 pounds, with facial hair. (Petitioner was 21 years-old at the time and 6'1"-tall and 160 pounds.) Based upon her description, Robinson was shown about 300 photos; this grouping of photos did not include one of Petitioner. Robinson told the police that she did not see the robber or Petitioner in any of those 300 photos.

Inv. Pero testified that the men depicted in the photos shown to Robinson were similar in appearance to Petitioner, but he agreed that Petitioner was 21 years-old while the men in the photos were in the 30- to 36-year-old range. Inv. Pero explained that, in his experience with child victims, they tend to have trouble estimating age.

Two days later, Robinson returned to the police station with her mother to check on the progress of the investigation. There she saw a Crime Stoppers poster on the wall with a picture of

Petitioner and the man who had come into the store with him on the day of the robbery (an individual named Giles who apparently was never charged). Robinson's mother obtained a copy of the poster and displayed it in the front of the store for about a month.

On October 22, 2007, a week before trial, Robinson attended a line-up procedure during which she selected the man in Position Number 2 (Petitioner) as being the robber and the person she recognized in the Crime Stoppers poster. Abrielle told police, "I recognize him from the newspaper and I think he's the one that held a gun to my head." T.285.

On February 1, 2008, the police found Petitioner at a Comfort Inn Hotel near the airport. The room had been booked by a woman named, Shannon Levert ("Levert"). Levert testified as a defense witness that she was the mother of Petitioner's 6-year-old son. On December 17, 2007, Petitioner's son had stayed home from school on suspension. Petitioner also had stayed home that entire day, except for a brief period in the morning. Levert had a criminal record for cashing fraudulent checks and was on probation when she testified. Levert acknowledged that the Robinson's store was not too far from her home.

Petitioner testified that, in December 2007, he was on probation for a felony conviction and had violated his probation terms by failing to report. On December 17, 2007, Petitioner testified, he stayed home with Levert and their son, except for a

-4-

quick trip to the store in the morning, because there was a snow storm. Petitioner denied robbing Robinson or having ever been to her family's store. He admitted that he was hiding from the police at the hotel.

About a month before trial, Petitioner told his mother, on a recorded phone call from the jail, that he thought he had been at Strong Memorial Hospital visiting his cousin on the day of the robbery. Subsequent investigation into hospital records revealed that Petitioner had been with his cousin on December 16, 2007, while the robbery was December 17, 2007. A review of school documents reminded Petitioner that on the 17th of December he was at home with his young son.

On the first day of deliberations, the jury sent out a verdict sheet listing the vote as five for acquittal and seven for conviction. T.506. On the second day of deliberations, the jurors declared themselves to be "absolutely deadlocked" and were given an Allen[2] charge. T.519. One hour later, the jury returned a verdict convicting Petitioner as charged in the indictment.

Petitioner was sentenced, as a second felony offender, to a determinate term of 10 years in prison plus 5 years of post-release supervision.

On May 3, 2013, the Appellate Division, Fourth Department, of New York State Supreme Court, unanimously affirmed Petitioner's

---

[2] Allen v. United States, 164 U.S. 492 (1896).

judgment of conviction. <u>People v. Benton</u>, 106 A.D.3d 1451 (4th Dep't 2013). The New York Court of Appeals denied leave to appeal on August 5, 2013. <u>People v. Benton</u>, 21 N.Y.3d 1040 (2013).

**B.    The Federal Habeas Petition**

In Petitioner's timely <u>pro</u> <u>se</u> habeas petition (Dkt #1), he asserts three of the claims asserted in his counseled appellate brief to the Appellate Division. <u>See</u> Petition ("Pet."), ¶¶ 22(A)-©. As Ground One, Petitioner alleges that the prosecutor committed multiple instances of misconduct during <u>voir</u> <u>dire</u> and her closing argument. Ground Two states that trial counsel was ineffective because he failed to object to the prosecutor's alleged misconduct in reducing the state's burden of proof to "merely producing a complainant" that the jury believed, rather than adducing proof of guilty beyond a reasonable doubt. Ground Three asserts that the trial court erred when it admitted, over objection, testimony that the complainant failed to identify someone other than Petitioner when she was shown 300 photos of men between the ages of 30 and 36, while Petitioner was only 21 at the time of the incident. Ground Four states new allegations regarding the ineffectiveness of trial counsel, i.e., that counsel (a) "failed to interview or call a forensic psychologist specializing in eyewitness identifications being that [Petitioner's] whole case hinged on an eleven year old girl's in-court identification"; and (b) "failed to move for a 'missing witness charge'" regarding the complainant's uncle, Scott.

-6-

Pet., ¶ 22(D). In his opposition memorandum of law, Respondent raised the defense of non-exhaustion with regard to all of Petitioner's claims save for Ground Two, and argued that all of the claims lack merit.  Petitioner did not file a reply brief.

For the reasons discussed below, the petition is dismissed.

## III. Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the '"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quotation and internal quotation marks omitted). A petitioner provides the State with the "necessary 'opportunity'" by "fairly present[ing] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Id. (citations omitted).

### A.    Unexhausted and Procedurally Defaulted Claims

Respondent argues that Ground One (prosecutorial misconduct); Ground Three (erroneous admission of identification testimony); and the portion of Ground Four alleging that trial counsel was ineffective for failing to request a missing witness charge are unexhausted and procedurally defaulted because Petitioner failed to fairly present them in federal constitutional terms to the state courts and is no longer able to do so because of various state

-7-

procedural bar rules.

As Respondent argues, Ground One and Ground Three are
unexhausted because, although Petitioner raised the claims in his
Appellate Division brief on direct appeal, he did not mention or
otherwise reference them in his leave application, see N.Y. CRIM.
PROC. LAW § 450.90(1), and thus failed to "invok[e] one complete
round of the State's established appellate review process[,]"
O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999), with regard to
those particular claims. "New York Court rules require that leave
applicants submit to the Court of Appeals briefs and other
documents from the lower courts to 'identify the issues on which
the application is based' and to pay '[p]articular written
attention . . . to identifying problems of reviewability and
preservation of error.'" Galdemez v. Keane, 394 F.3d 68, 74 (2d
Cir. 2005) (quoting N.Y. CT. R. § 500.10(a) (McKinney 1999), amended
and recodified at N.Y. COMP. CODES R. & REGS. tit. 22, § 500.20). In
the leave letter, Petitioner "[e]nclosed . . . the [appellate]
briefs" and

> expressly urge[d] that leave to appeal be granted to view
> the following issues; specifically, leave should be
> granted based on the deprivation of Mr. Benton's federal
> constitutional right to effective assistance of counsel,
> as explained fully in Point II of Brief for Appellant. .
> . .

SR.117 (Dkt #7-2). However, the Second Circuit has held that
"arguing one claim in [a petitioner's leave] letter while attaching
an appellate brief without explicitly alerting the [New York Court

of Appeals] to each claim raised does not fairly present such claims for purposes of the exhaustion requirement . . . ." Jordan v. Lefevre, 206 F.3d 196, 198-99 (2d Cir. 2000). That is what Petitioner did here, and Grounds One and Three are unexhausted.

With regard to Ground Four, that trial counsel was ineffective for failing to request a missing-witness charge, Petitioner acknowledges that he did not raise the claim on direct appeal, see Pet., ¶ 23, and that he has not filed a motion pursuant to C.P.L. § 440.10 or any other state collateral proceedings, see id., ¶ 14. This claim of ineffective assistance is unexhausted.

Nevertheless, these three claims must be deemed exhausted but procedurally defaulted because they are now barred from presentation to a state court. See Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) ("For exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.'") (quoting Harris v. Reed, 489 U.S. 255, 263 n. 9 (1989)). At this stage, Petitioner has no avenues in state court by which to exhaust these claims. First, he has already utilized the one direct appeal to which he is entitled. E.g., Colon v. Connell, No. 07 Civ. 7169(BSJ)(JCF), 2009 WL 2002036, at *6 n. 4 (S.D.N.Y. July 9, 2009) (citing N.Y. R. CT. § 500.20(d) and N.Y. CRIM. PROC. LAW § 460.10(5) (providing for a 30-day window for any such application to be filed); N.Y. R. CT. § 500.20(a)(2) (leave

-9-

letter must indicate that "that no application for the same relief has been addressed to a justice of the Appellate Division, as only one application is available")). Second, Petitioner's failure to have raised these record-based claims on direct appeal forecloses collateral review of them in state court. See N.Y. CRIM. PROC. LAW § 440.10(2)(c) (mandating dismissal of C.P.L. § 440.10 motion if claim could have been raised on direct review); Sweet v. Bennett, 353 F.3d 135, 140 (2d Cir. 2003) (where ineffectiveness of counsel was clear from the record, and no new evidentiary hearing would be required to develop the claim, it was deemed exhausted but procedurally defaulted for the purposes of federal habeas review).

Ordinarily, federal courts may not review procedurally barred claims unless the petitioner can show both cause for the default and prejudice resulting therefrom, or that a fundamental miscarriage of justice will occur if the federal court declines to review the habeas claim. Coleman v. Thompson, 501 U.S. 722, 749-50 (1991). Petitioner faults appellate counsel for failing to raise on direct appeal the claim that his trial counsel erred by not requesting a missing witness charge. "[I]n certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice" as cause for a procedural default. Edwards v. Carpenter, 529 U.S. 446, 451 (2000) (citation omitted). The Supreme Court has explained that"ineffective assistance adequate to establish cause for the procedural default

-10-

of some other constitutional claim is itself an independent constitutional claim[,]" which must be exhausted and not itself subject to a procedural default. See id. at 451-52. Here, however, Petitioner has not exhausted an independent claim based on the ineffectiveness of appellate counsel, and therefore cannot use such a claim as "cause" to excuse the procedural default. In the absence of cause, there is no need to analyze whether prejudice resulted. Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985). Finally, Petitioner has not presented any new evidence suggesting that he could meet the "fundamental miscarriage of justice" exception which requires a showing of actual innocence. Murray v. Carrier, 477 U.S. 478, 496 (1986). As a result, Grounds One, Three, and the portion of Ground Four alleging counsel was ineffective for failing to request a missing-witness charge are dismissed as procedurally barred from habeas review.

**B.  Unexhausted Claim**

Respondent argues that Petitioner's allegation in Ground Four that trial counsel was ineffective in failing "to interview or call a forensic psychologist specializing in eyewitness identifications," Pet., ¶ 22(D), is unexhausted and could still be raised in state court. As Respondent notes, this claim was not raised on direct appeal or in a C.P.L. § 440.10 motion. However, because it apparently involves facts dehors the trial record (e.g., whether counsel ever consulted with an expert), it could be raised

-11-

in a C.P.L. § 440.10 motion. <u>See</u>, <u>e.g.</u>, <u>People v. Haynes</u>, 39 A.D.3d 562, 564 (2d Dep't 2007) (claim of ineffective assistance, to extent that it was premised on trial counsel's failure to investigate and call certain witnesses, involved matters <u>dehors</u> the record and therefore was not properly presented on direct appeal); <u>People v. Perez</u>, 2006 WL 1295858, at *4–*6 (Sup. Ct. Mar. 24, 2006) (in a C.P.L. § 440.10 proceeding, court reviewed on the merits ineffective assistance claim based on trial counsel's failure to hire an expert witness).

The Court agrees that the claim is unexhausted since Petitioner could return to state court and file a C.P.L. § 440.10 motion asserting it. This would require that the petition be stayed and held in abeyance, which Petitioner has not requested. Even if Petitioner had done so, the Court finds that he would not be able to meet the standard set forth in <u>Rhines v. Weber</u>, 544 U.S. 269, 277-78 (2005), for obtaining a stay. On this record, Petitioner cannot show good cause for his failure to exhaust his claim earlier, and absent such cause, the Court would abuse its discretion in granting a stay. <u>See</u> <u>Miller v. Boucaud</u>, No. 09-CV-6598(MAT), 2012 WL 3262426, at *5 (W.D.N.Y. Aug. 8, 2012). Under 28 U.S.C. § 2254(b)(2), district courts now have the authority to deny (but not grant) a petition containing unexhausted claims on the merits. <u>See</u> 28 U.S.C. § 2254(b)(2). That is the course the Court elects to follow in this case, since Petitioner's

unexhausted ineffective assistance claim is without merit under any standard of review, as discussed further below.

## IV.  Discussion

The Court now turns to an analysis of Petitioner's unexhausted claim that trial counsel was ineffective in failing to consult with an expert witness and failing to object to prosecutorial misconduct during <u>voir</u> <u>dire</u>.

### A.   Legal Standard

Under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), to prevail on a claim of ineffective assistance of counsel, a petitioner must establish two components. The first is deficient performance–that counsel's performance "fell below an objective standard of reasonableness." <u>Id.</u> at 688, 694. The deficient performance inquiry examines the reasonableness of trial counsel's actions under "all the circumstances," <u>id.</u> at 688, from counsel's perspective at the time, <u>id.</u> at 689. Prejudice is the second half of an ineffective assistance claim, and it is shown when there "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694.

### B.   Counsel's Alleged Errors

#### 1.   Failure to Call an Expert Witness

Petitioner faults trial counsel for failing to "interview or call a forensic psychologist specializing in eyewitness

identifications being that [Petitioner's] whole case hinged on an eleven year old girl's in-court identification." Pet., ¶ 22(D). Petitioner contends that counsel required the assistance of an expert in eyewitness identification to undermine Robinson's pre-trial and in-court identification of him.

Courts in this Circuit have made clear that "[t]he decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir.), cert. denied, 484 U.S. 958 (1987). As courts in this Circuit have observed, "the decision whether or not to call an expert witness generally falls within the wide sphere of strategic choices for which counsel will not be second-guessed on habeas review." Stapleton v. Greiner, 2000 WL 1207259, at *16 (E.D.N.Y. July 10, 2000) (citing United States v. Kirsh, 54 F.3d 1062, 1072 (2d Cir. 1995) (rejecting ineffectiveness challenge on direct appeal based on trial counsel's failure to call a fingerprint expert); other citation omitted)).

Petitioner has offered "no evidence that such an expert was available or that he would have testified favorably if called." McDowell v. Heath, No. 09 Civ. 7887(RO)(MHD), 2013 WL 2896992, at *36 (S.D.N.Y. June 13, 2013). Therefore, the Court "cannot say whether expert testimony, if admitted, would have been helpful to the defense, much less whether it would have been sufficiently

compelling to call into question the outcome of the trial." Id. (citing People v. Lopez, No. 3702/99, 2006 WL 3962056, at *8 (Sup. Ct. Dec. 21, 2006) (denying ineffective assistance claim premised in part on counsel's failure to call various expert witnesses where defendant did not provide any expert affidavit; "without an affidavit . . . swearing to the facts that [the experts] would have testified to . . . it [was] pure speculation to conclude that they were readily available or could have provided any favorable testimony")). In other words, Petitioner has not demonstrated prejudice from trial counsel's alleged failure to consult with or retain an expert in eyewitness identifications.

"[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if[, as here,] the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697. The Court wishes to point out that Petitioner has not provided any basis, apart from his conclusory assertion that counsel should have, but did not, consult with or retain a forensic psychologist, to disregard the "heavy measure of deference[,]" Strickland, 466 U.S. at 690-91, that must be applied to counsel's judgments. See McDowell v. Heath, 2013 WL 2896992, at *36 (rejecting ineffective assistance of counsel claim based on counsel's failure to call an expert witness where there was "no evidence of trial counsel's purported failure to investigate the possibility of retaining an expert, including evidence that counsel

did not 'at least' consult an expert"). Here, Petitioner has come forward with no evidence that "trial counsel gave less than reasonable consideration to hiring an expert," McDowell, 2013 WL 2896992, at *36, in eyewitness identification testimony.

### 2. Failure to Object to Prosecutorial Misconduct During Voir Dire

Petitioner asserts that during voir dire, trial counsel erroneously failed to object when the prosecutor "extracted promises from every sworn juror" "to convict if the juror believed the complainant, and not to ask for any other proof[.]" See Petitioner's Appellate Brief, SR16-21 (citing T.93-94, 161-63)). According to Petitioner, the prosecutor thus reduced "the People's burden of proof to one of merely producing a complainant whom the jury 'believe[d]' rather than proof beyond a reasonable doubt." Id. The Court notes that on appeal, the Appellate Division found the underlying prosecutorial misconduct claim to be without merit. Benton, 106 A.D.3d at 1451 ("conclud[ing] [that] the prosecutor did not engage in misconduct by attempting to obtain unequivocal assurances from prospective jurors that they would be able to convict defendant solely on the basis of the testimony of an 11-year-old eyewitness if that testimony credibly established the elements of the crime beyond a reasonable doubt") (citations omitted).

As the Second Circuit has noted, the "[f]ailure to make a meritless argument does not amount to ineffective assistance."

-16-

United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999) (citations omitted), abrogated on other grounds, Scheidler, v. National Organization for Women, Inc., 537 U.S. 393, 403 n.8 (2003). In rejecting Petitioner's claim that the prosecutor committed misconduct during voir dire, the Appellate Division cited People v. Calabria, 3 N.Y.3d 80 (2004), for the proposition that "that the testimony of one witness can be enough to support a conviction, noting that it is typically the province of the jury to determine a witness's credibility[.]" Id. at 82 (citation omitted). The same is true under federal law. See, e.g., United States v. Danzey, 594 F.2d 905, 916 (2d Cir.) ("[T]he testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction.") (citations omitted), cert. denied, 441 U.S. 951 (1979). That was the key concern for the prosecutor in this case, since only one of the robbery victims (Abrielle), was available to testify. Scott, who also had been at the store during the robbery, had ended his relationship with Abrielle's aunt prior to Petitioner's trial, and had left the jurisdiction. The Appellate Division also cited People v. White, 213 A.D.2d 507 (2d Dep't 1995), which upheld the granting of a for-cause challenge by the prosecutor of a "prospective juror who had expressed a disinclination to render a guilty verdict in the absence of testimony from multiple eyewitnesses[.]" Id. at 508 (citations omitted). Like the prosecutor in White, the prosecutor here was

attempting to weed out jurors who did not have a preconceived notion that more than one eyewitness was required to establish guilty beyond a reasonable doubt, since the prosecutor here only had one eyewitness to present. The Appellate Division correctly found, as a matter of state law, that the prosecutor did not commit error since she was entitled to inquire as to whether the potential jurors could follow the law as given to them by the trial judge. This Court also cannot say that the Appellate Division erred as a matter of federal constitutional law. The Constitution guarantees a criminal defendant a fair and impartial jury, and "[t]he proper occasion for such determination is upon the voir dire examination." McCoy v. Goldston, 652 F.2d 657 (6th Cir. 1981). Given that the Court has found neither constitutional error nor reversible error under state law, Petitioner "was not prejudiced by counsel's failure to object and counsel was not ineffective. Arce v. Smith, 710 F. Supp. 920, 926-27 (S.D.N.Y.), aff'd, 889 F.2d 1271 (2d Cir. 1989), cert. denied, 495 U.S. 937 (1990).

## V. Conclusion

For the reasons discussed above, the petition (Dkt. #1) is dismissed. As Petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability will issue. See 28 U.S.C. § 2253(c)(2). Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty

(30) days of the date of judgment in this action. The Clerk of the Court is requested to close this case.

      **SO ORDERED**.

S/ Michael A. Telesca

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     Rochester, New York
             March 5, 2015